IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| James Franklin Richburg,              )<br>    Plaintiff,                              )<br>                                                 )<br>            v.                               )<br>                                                 )<br>                                                 )<br>Administrator Ken Williams; Director W. T. )<br>Johnson; and Kitchen Supervisor Robin )<br>Cross,                                          )<br>    Defendants.                         )<br>_____)  | Case No. 8:10-cv-981-DCN-JDA<br><br>**REPORT AND RECOMMENDATION<br>OF MAGISTRATE JUDGE** |

This matter is before the Court on Defendants' motion for summary judgment [Doc. 20]. Plaintiff, who at the time this action was filed was an inmate at the Marion County Detention Center ("MCDC") and who is proceeding *pro se*, brought this civil rights action pursuant to 42 U.S.C. § 1983.[1] Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the District Court.

On September 28, 2010, Defendants filed a motion to dismiss. By order of this court filed October 1, 2010 pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), Plaintiff was advised of the dismissal/summary judgment procedure and the possible consequences if he failed to respond adequately. Plaintiff filed a motion for extension of time to file a response, which the Court granted on November 16, 2010, giving Plaintiff until December 6, 2010 to file his response to Defendants' motion for summary judgment and noting that no further extensions would be granted. Despite this explanation and extension,

---

[1] Plaintiff is no longer an inmate at the MCDC. [*See* Doc. 19, Notice of Change of Address.]

Plaintiff elected not to respond to the motion. On December 10, 2010, this Court issued an Order giving Plaintiff an additional ten days to respond to Defendants' motion for summary judgment. On December 28, 2010, Plaintiff filed his opposition to the motion. On January 4, 2011, Defendants filed their reply.

## **BACKGROUND**

Plaintiff is seeking injunctive relief and monetary damages against Defendants Ken Williams, the County Administrator; W. T. Johnson, the Director of the MCDC; and Robin Cross, the Kitchen Supervisor at the MCDC. Plaintiff alleges Defendants violated his constitutional rights, including "religious rights, 1st Amendment, discrimination, misappropriation of inmate funds, no water fountains, not handicap acces[si]ble." [Doc. 1 at 2.]

With respect to violations of religious rights, Plaintiff asserts that during his intake screening on December 25, 2009, he was asked if he was allergic to anything, and he informed the officers that he did not eat pork. Plaintiff was allegedly told that no pork was served at the MCDC. Plaintiff alleges, however, that on March 8, 2010, he found pork in his food. Plaintiff further alleges he complained about the pork to officers "Derk" and "Ford." On March 29, 2010, Plaintiff asserts more pork was served, and he again complained, this time to officer "Woodberry." Plaintiff avers he believed for four months that he was eating vegetarian beans when, in fact, he was being served pork and beans. In addition to being served pork, Plaintiff complains that Muslims are not treated as a religious organization because televisions are not turned down during their services, they do not have a representative, and they are not allowed to have religious books because they are hardback.

2

Plaintiff also asserts that inmates are written up and have privileges taken away without hearings and that funds were improperly deducted from his account. Finally, Plaintiff lists lack of water fountains and handicap accessible units as an issue to be litigated, but fails to assert any further allegations in the statement of claim with respect to this issue.

## APPLICABLE LAW

### Liberal Construction of *Pro Se* Complaint

Plaintiff brought this action *pro se*, which requires the Court to liberally construe his pleadings. *Estelle v. Gamble*, 429 U.S.97 (1976); *Haines v. Kerner*, 404 U.S. 519 (1972); *Loe v. Armistead*, 582 F.2d 1291 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147 (4th Cir. 1978). *Pro se* pleadings are held to a less stringent standard than those drafted by attorneys. *Hughes v. Rowe*, 449 U.S. 5 (1980) (per curiam). Even under this less stringent standard, however, the *pro se* complaint is still subject to summary dismissal. The mandated liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the petitioner could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128 (10th Cir. 1999). A court may not construct the plaintiff's legal arguments for him. *Small v. Endicott*, 998 F.2d 411 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

### Motion for Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(e). Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that (1) there is no genuine issue as to any material fact and (2) he is entitled to judgment as a matter of law. As to the first of these determinations, a fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355,

4

365 (4th Cir.1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56(e) provides in pertinent part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e). Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must produce existence of every element essential to his action that he bears the burden of adducing at a trial on the merits.

## DISCUSSION

**Claims for Injunctive and/or Declaratory Relief are Moot**

First, because Plaintiff is no longer incarcerated at the MCDC, his claims are moot to the extent he is seeking injunctive and/or declaratory relief. *Slade v. Hampton Roads Reg'l Jail*, 407 F.3d 243, 248–49 (4th Cir. 2005) (holding that former detainee's request for injunctive relief was moot). Plaintiff's claims for monetary damages, however, survive his release from the MCDC, *id.*, and, as public officials, Defendants are all subject to suit for damages in their individual capacities in a § 1983 lawsuit, *Hafer v. Melo*, 502 U.S. 21, 31 (1991); *Goodmon v. Rockefeller*, 947 F.2d 1186, 1187 (4th Cir. 1991). Nevertheless, for the reasons set forth below, the evidence is insufficient to create a genuine issue of fact as to whether Defendants have violated Plaintiff's constitutional rights.

**Defendants Williams and Johnson and Non-Food-Related Claims Against Defendant Cross**

Initially, the Court notes that none of the three Defendants named in the caption of Plaintiff's Complaint are even mentioned in the text of the Complaint. While Defendant Cross has submitted an affidavit indicating that she was the kitchen supervisor [Doc. 20-2], possibly bringing her within the parameters of Plaintiff's allegations regarding being served pork, there is no indication that Defendant Williams or Defendant Johnson was present or had anything to do with any of the events set forth in the Complaint. Because there is no doctrine of respondeat superior in § 1983 claims, *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691–94 (1978), the Defendants are liable in their individual capacities only for their personal wrongdoing or supervisory actions that violated constitutional norms, *see Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (setting forth elements necessary to establish supervisory liability under § 1983). Plaintiff failed to allege facts sufficient to demonstrate any personal or supervisory wrongdoing by Defendants Williams and Johnson. Accordingly, Defendants Williams and Johnson are entitled to be dismissed even if the case were to proceed against Defendant Cross. Similarly, the claims against Defendant Cross, the kitchen supervisor, that do not relate to Plaintiff's allegations of being served pork are entitled to be dismissed because there is no indication that Defendant Cross was present or had anything to do with any of those events outside of being served pork. In an abundance of caution, however, the Court will address each of Plaintiff's claims.

**Plaintiff's Allegations About Conditions of Confinement**

With respect to Plaintiff's claims about the conditions of confinement and practices at the MCDC, as a pretrial detainee during the time period set forth in the Complaint, Plaintiff's claims are evaluated under the Due Process Clause of the Fourteenth Amendment rather than the Eight Amendment, which is used to evaluate conditions of confinement for those convicted of crimes. *See City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983). In any event, "[t]he due process rights of a pretrial detainee are at least as great as the [E]ighth [A]mendment protections available to the convicted prisoner . . . ." *Martin v. Gentile*, 849 F.2d 863, 870 (4th Cir. 1988). Pretrial detainees, however, have not been adjudicated guilty of a crime and may not be subjected to any form of "punishment." *Id.* To establish that a condition or restriction of confinement is constitutionally impermissible "punishment," a pretrial detainee must show "either that it was (1) imposed with an expressed intent to punish or (2) not reasonably related to a legitimate nonpunitive governmental objective, in which case an intent to punish may be inferred." *Id.* (citing *Bell v. Wolfish*, 441 U.S. 520, 538–40 (1979)).

During the time period set forth in the Complaint, Plaintiff was a prisoner in a county detention center, not a guest in a hotel, and it should be expected that conditions in such a setting are often times less than ideal. *See, e.g.*, *Bell*, 441 U.S. at 537 ("[T]he fact that such detention interferes with the detainee's understandable desire to live as comfortably as possible with as little restraint as possible during confinement does not convert the conditions or restrictions of detention into 'punishment.'"); *Harris v. Fleming*, 839 F.2d 1232, 1236 (7th Cir. 1988) ("Inmates cannot expect the amenities, conveniences and services of a good hotel . . . ."). As discussed below, Plaintiff has failed to allege any injury as a result of the conditions of which he complains and has failed to set forth any facts or evidence to

establish that the conditions about which he complains resulted in any violation of his constitutional rights. *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) ("In the context of a conditions-of-confinement claim, to demonstrate that a deprivation is extreme enough to satisfy the objective component of an Eighth Amendment claim, a prisoner must 'produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions,' or demonstrate a substantial risk of such serious harm resulting from the prisoner's unwilling exposure to the challenged conditions.") (quoting *Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir. 1993)). Plaintiff's general and conclusory allegations about the conditions at the jail are insufficient to give rise to a genuine issue of fact as to whether any of his constitutional rights were violated.

Plaintiff references a lack of water fountains and handicap accessible units as an issue he attempts to litigate but fails to allege any facts related to this issue in his statement of claim. Nor does Plaintiff allege that he, specifically, has suffered any injury as a result of these conditions. Plaintiff has failed to demonstrate sufficient evidence to support a claim of unconstitutional conditions of confinement on these grounds.

With respect to Plaintiff's allegations that inmates are written up and privileges are taken away without hearings, Plaintiff has failed to allege any injury as a result of these write-ups and privileges being taken away. In fact, Plaintiff fails to even allege that he was written up or had privileges taken away without a hearing. There are no allegations that the officers' conduct resulted in any violation of Plaintiff's constitutional rights. *See Gaston v. Taylor*, 946 F.2d 340, 343 (4th Cir. 1991) (holding that changes in conditions of confinement and the denial of privileges are matters that every prisoner can anticipate and are necessarily functions of prison management and must be left to the broad discretion

of prison administrators to enable them to manage the prisons safely and efficiently). Accordingly, Plaintiff has failed to demonstrate sufficient evidence to support a claim of unconstitutional conditions of confinement on these grounds.

**Plaintiff's Allegations About Religious Rights**

Plaintiff alleges that Muslim prisoners are treated differently from other prisoners at the MCDC, and the religious practices of Muslims are not accommodated. Specifically, Plaintiff alleges that he was served pork even though his religion does not allow him to eat pork, that Muslims are denied religious books because the books are hardback, that the televisions are not turned down during the Muslims' religious services, and that Muslims have no representative.

With respect to Plaintiff's allegations about being served pork, Plaintiff has provided no evidence whatsoever to support the general and conclusory claim that the food service and/or the food he received violated his constitutional rights or resulted in any condition that would entitle him to monetary damages. *See House v. New Castle Cnty.*, 824 F. Supp. 477, 485 (D. Del. 1993) (holding that a plaintiff's conclusory allegations are insufficient to maintain a claim, especially when plaintiff fails to counter contradictory evidence in the record). On the other hand, Defendants have provided a sworn affidavit from Defendant Cross, the kitchen supervisor, attesting to the procedures used at the jail. Defendant Cross states that no pork products are currently being served at the MCDC and, when pork and beans has been served in the past, inmates also received other food as part of the meal, including turkey hot dogs, buns, fruit, and chips. [Doc. 20-2 ¶ 11.] Plaintiff could obtain a balanced meal from these items; therefore, the MCDC was not required to provide a special no-pork diet for Plaintiff. *See Abernathy v. Cunningham*, 393 F.2d 775, 778 (4th

Cir. 1968) (holding that prison was not required to provide special diet to prisoner obliged by religious belief to abstain from pork where prisoner could obtain balanced diet by voluntarily avoiding such foods). The Constitution compels only that a prisoner be provided a nutritionally balanced meal that will maintain his health. *See LeMaire v. Maass*, 12 F.3d 1444, 1456 (9th Cir. 1993) (finding that inmate's complaint regarding the use of Nutraloaf does not rise to the threshold level of a constitutional deprivation). Here, Plaintiff has come forward with no evidence that the meals provided to him were insufficient or that Plaintiff suffered any health problems because he was served pork; therefore, Plaintiff has failed to set forth a constitutional violation.

Plaintiff's complaints about access to hardback religious books likewise fail to set forth a constitutional violation. Plaintiff does not even allege that he was completely denied access to religious books; rather, he complains only that he was not allowed to have a hardback version. Defendants have provided a sworn affidavit from Bernice A. Williams, the support supervisor at the MCDC, attesting that the prohibition on hardback books applies to all publications at the jail. [Doc. 20-3 ¶ 5.]

The Supreme Court has stated, "It hardly needs to be emphasized that hardback books are especially serviceable for smuggling contraband into an institution; money, drugs, and weapons easily may be secreted in the bindings." *Bell*, 441 U.S. at 550–51. The Supreme Court approved of a restriction on hardback books because the restriction was content neutral, there were alternative sources to obtain softcover formats, and the inmates were incarcerated for only a short period of time. *Id.* at 551–52. Restrictions on hardback books, including religious materials, have been upheld by other courts as well. *See Shelton v. El Paso Cnty.*, No. 08-26, 2010 WL 3503511 at *6–7 (W.D. Tex. Sept. 1,

2010) (citing cases where bans on hardback books, even religious ones, were upheld when soft cover books were permitted). Again, Plaintiff has failed to set forth a constitutional violation.

Plaintiff has also failed to set forth a constitutional violation with respect to his allegations that televisions are not turned down during services and that Muslims have no representative. Prisoners have a right to practice religion. *Sindram v. Saxton*, 955 F.2d 42 (4th Cir. 1992) (unpublished table decision) (citing *O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1987)). But that right may be restricted. *Id.* Absent an allegation that Plaintiff requested religious services and was turned down, summary judgment is proper. *Id.* (citing *Childs v. Duckworth*, 705 F.2d 915 (7th Cir. 1983); *Garza v. Miller*, 688 F.2d 480, 486–87 (7th Cir. 1982)). Therefore, Plaintiff has failed to set forth a constitutional violation.

**Plaintiff's Allegations About Misappropriation of Funds**

Plaintiff asserts that money was improperly deducted from his account "when [he] had not gone to the nurse for anything." The Court notes that Defendants do not specifically address this allegation in their memorandum in support of motion for summary judgment; however, in a supporting affidavit, Bernice A. Williams states that money would have been deducted from Plaintiff's account only for visits to the nurse or purchases at the canteen. [Doc. 20-3 ¶ 6.] In a separate affidavit, Mary C. Ammons states that Plaintiff was never seen by the medical staff during his incarceration. [Doc. 20-4 ¶ 7.] From this information, the Court cannot discern whether the deductions from Plaintiff's account were proper. However, a prisoner's claim for deprivation of personal property is not cognizable under § 1983. *Parratt v. Taylor*, 451 U.S. 527, 544 (1981) (holding that a prisoner was "deprived" of his property within the meaning of the due process clause of the Fourteenth

Amendment but that the state's tort remedy provided all the process that was due); *see also Drake v. Jones*, No. 08-0156, 2008 WL 2051744 at *3, (W.D. La. March 31, 2008) (holding that if state law remedies are available, no further due process required for prisoner's claims that true balance of account was not transferred when he was transferred to another prison). Here, Plaintiff could have instituted a civil action in the state courts to recover his personal property under S.C. Code § 15-69-10 et seq. Therefore, Plaintiff has failed to establish he has been deprived of any constitutional right.

**Qualified Immunity**

Defendants argue they are entitled to qualified immunity as their conduct did not violate any clearly-established rights of which a reasonable government official would have known. The Court agrees. Qualified immunity protects government officials performing discretionary functions from civil damage suits as long as the conduct in question does not "violate clearly established rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This qualified immunity is lost if an official violates a constitutional or statutory right of a plaintiff that was clearly established at the time of the alleged violation so that an objectively reasonable official in the defendant's position would have known of it. *Id.*

The United States Supreme Court has held that a court "'must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation.'" *Wilson v. Layne*, 526 U.S. 603, 609 (1999) (quoting *Conn v. Gabbert*, 526 U.S. 286, 290 (1999)). Further, the Supreme Court held that "[d]eciding the constitutional question before addressing the qualified immunity question also promotes

clarity in the legal standards for official conduct, to the benefit of both the officers and the general public." *Id.* If the court first determines that no right has been violated, the inquiry ends there "because government officials cannot have known of a right that does not exist." *Porterfield v. Lott*, 156 F.3d 563, 567 (4th Cir. 1998). Plaintiff's conclusory allegations fail to demonstrate that Defendants violated Plaintiff's constitutional rights. Therefore, Defendants are entitled to qualified immunity.

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, the Court recommends that Defendants' motion for summary judgment be GRANTED.

IT IS SO RECOMMENDED.

                                        s/Jacquelyn D. Austin
                                        United States Magistrate Judge

March 31, 2011
Greenville, South Carolina